**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| T.J. McDERMOTT TRANSPORTATION CO., INC., <br><br>                        Plaintiff, <br><br>      v. <br><br> CUMMINS, INC., CUMMINS EMISSION SYSTEMS, INC., and PACCAR, INC. d/b/a PETERBILT MOTOR COMPANY, <br><br>                      Defendants. | **OPINION** <br><br> Civ. No. 14-04209 (WHW) (CLW) |

**Walls, Senior District Judge**

This matter arises from Plaintiff's purchase of five long-haul tractors which it claims were defective. Defendants Cummins, Inc. and Cummins Emission Systems, Inc. (together "Cummins") have filed a joint motion to dismiss Plaintiff's amended complaint. Cummins Mot. to Dismiss, ECF No. 22. Defendant PACCAR, Inc. d/b/a Peterbilt Motors Company ("Peterbilt") has also filed a motion to dismiss Plaintiff's amended complaint. Peterbilt Mot. to Dismiss, ECF No. 21. Without oral argument under Federal Rule of Civil Procedure 78(b), the Court grants each motion in part and denies each motion in part.

The Court denies dismissal of Plaintiff's claims against Cummins for violation of the New Jersey Consumer Fraud Act and breach of express warranty, but grants dismissal of Plaintiff's claims against Cummins for breach of the implied warranty of merchantability, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. As for Plaintiff's claims against Peterbilt, the Court denies dismissal of Plaintiff's claim for violation of the New Jersey Consumer Fraud Act, but grants dismissal of Plaintiff's claims for breach of express warranty, breach of the implied warranty of merchantability, breach of the implied covenant of good faith

NOT FOR PUBLICATION

and fair dealing, and unjust enrichment. Finally, the Court also denies dismissal of Plaintiff's claims for consequential and incidental damages.

## FACTUAL AND PROCEDURAL BACKGROUND

This case invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff T.J. McDermott Transportation Company, Inc. ("McDermott") is incorporated in New Jersey and has its principal place of business here. Am. Compl. ¶ 2, ECF No. 17. Peterbilt is a Delaware corporation with its principal place of business in Washington. *Id.* ¶ 4. Both Cummins entities are Indiana corporations with principal places of business in Indiana. *Id.* ¶¶ 2-3.

Plaintiff alleges that it purchased five Peterbilt Series 389 long-haul tractors with Cummins ISX15 engines, which Defendants "jointly developed, designed, manufactured, marketed, assembled and sold." *Id.* ¶¶ 8-10, 16. Plaintiff paid $670,061 for the tractors over the course of a year: buying two on December 31, 2010, one on March 29, 2011, and two on December 8, 2011. *Id.* ¶ 10.

Before making these purchases, Plaintiff contends that it "obtained literature regarding the Peterbilt Series 389 tractors with the Cummins ISX15 engine" and "made specific inquiry of Rush." *Id.* ¶¶ 12-13. Plaintiff does not further identify the nature or source of the literature it obtained. Nor does Plaintiff identify "Rush," a non-party. Without attribution to either the literature or to Rush, Plaintiff asserts that, "[a]mong other things, Plaintiff was led to believe that the [tractors] would, with appropriate maintenance, perform reliably and cost effectively for one million miles and would provide increased fuel efficiency, power and lower maintenance costs." *Id.* ¶ 14. Plaintiff adds that "Defendants' specifications" included certain mileage-based maintenance intervals for the tractors' fuel filters, coolant filters, valves, and diesel exhaust fluid filters. *Id.* ¶ 15. Plaintiff also asserts that "Defendants warranted to Plaintiff that the ISX15 Engines

2

**NOT FOR PUBLICATION**

and Aftertreatment System would be free from defects in material and workmanship and that in the event a defect manifested, Cummins was obligated to correct the defect." *Id.* ¶ 25.

Plaintiff contends that, contrary to these representations and warranties, its tractors suffered from defects in their engines, aftertreatment systems, and on-board diagnostic systems. *Id.* ¶¶ 26-27, 29. Plaintiff lists manufacturing, assembly, and/or design defects related to (a) the engines' exhaust gas recirculation valve assembly hardware, (b) the aftertreatment systems' diesel particulate filters, (c) the aftertreatment systems' diesel particulate filters' hydrocarbon dosers, (d) various sensors; and (e) the aftertreatment systems' piping and containment components. *Id.* ¶¶ 26-27.

Plaintiff claims that it was not alone in experiencing these problems. Rather, Plaintiff charges that Defendants' entire 2007 through 2009 model-year lines of Peterbilt Series 389 tractors with Cummins ISX15 engines experienced "significant problems" with various components, which Defendants knew about and failed to correct for subsequent model-year lines. *Id.* ¶¶ 23-24. Plaintiff cites a September 2010 report issued by "CK Commercial Vehicle Research" which, according to Plaintiff, indicates that "other fleet owners whose tractors had Cummins engines and aftertreatment systems experienced diesel particulate filters ('DPFs') premature cracking . . . at a high rate." *Id.* ¶ 27.

Despite naming a number of specific defects in the amended complaint, Plaintiff maintains that the exact nature of its tractors' defects lies within Defendants' exclusive knowledge. *Id.* ¶ 42. Plaintiff explains that Peterbilt Series 389 tractors with Cummins ISX15 engines include on-board diagnostic systems which "store trouble or fault codes and provide data to Defendants' and/or their authorized service providers' diagnostic computers used to determine the meaning and potential repair associated with the fault codes." *Id.* ¶ 17. Plaintiff alleges that "Defendants deliberately do

**NOT FOR PUBLICATION**

not release explanations or descriptions of the problems that are tethered to the . . . fault codes to their customers . . . [and] Defendants' customers such as Plaintiff have no way of identifying, diagnosing, or fixing faults that are detected." *Id.* ¶ 21.

Plaintiff claims that Defendants knew about and "intentionally concealed" the defects in the tractors Plaintiff purchased. *Id.* ¶¶ 22, 26, 29. In addition to asserting that Defendants received information about the tractors' defects from the diagnostic systems, Plaintiff also contends that Defendants' knowledge of the defects is demonstrated by Cummins's issuance, between April 2011 and February 2014, of "at least seventeen (17) technical service bulletins ('TSBs'), listing problems with the Engines and Aftertreatment systems installed by Defendants in tractors like Plaintiff's tractors." *Id.* ¶ 28. Plaintiff states that the "TSBs acknowledge problems, among others, with the diesel particulate filters (including cracking) and problems with valves and seals elsewhere in the Engine." *Id.* ¶ 29.

Plaintiff does not allege that each of its five tractors contained all of the flaws listed in the amended complaint, but states that "Plaintiff's Tractors experienced most of the foregoing problems, which caused frequent break downs, engine derating and shutdown, diesel particulate filter plugging, clogging and cracking, and other aftertreatment system failures that rendered the tractors inoperable and unusable for long periods of time." *Id.* ¶ 31. Plaintiff acknowledges that Defendants performed multiple repairs on Plaintiff's tractors, but alleges that the repairs did not fix the problems and that Plaintiff spent over $80,000 on repairs after the tractors' warranty periods ended. *Id.* ¶¶ 33, 36. Plaintiff contends that, throughout Defendants' repair efforts during the warranty periods, Defendants knew about and continued to intentionally conceal the persistent nature of the tractors' problems. *Id.* ¶ 35.

NOT FOR PUBLICATION

Because of the alleged defects, Plaintiff asserts that its tractors "were worth significantly less than their purchase price, had substantially diminished resale value, and diminished intrinsic value." *Id.* ¶ 38. While Plaintiff does not quantify its allegations of lost resale value, Plaintiff indicates that it sold all five tractors in August 2014 for prices ranging from $70,000 to $87,000. *Id.* ¶ 39. Plaintiff also claims that its damages include expenses arising from replacement vehicle rentals, lost profits, and lost goodwill. *Id.* ¶ 41.

Plaintiff seeks to recover from Defendants for violations of the New Jersey Consumer Fraud Act (the "NJCFA"), breach of express warranty, breach of the implied warranty of merchantability, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. *Id.* ¶¶ 43-95. Cummins and Peterbilt now separately move to dismiss Plaintiff's amended complaint for failure to state a claim under Rule 12(b)(6).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679.

**NOT FOR PUBLICATION**

As the Third Circuit Court of Appeals has explained, the analysis "unfolds in three steps." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "First, we outline the elements a plaintiff must plead to state a claim for relief. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. Finally, we look for well-pled factual allegations, assume their veracity, and then 'determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (citing and quoting *Iqbal*, 556 U.S. at 675-79, and *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011)). As a general matter, the court's inquiry "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002).

In evaluating a plaintiff's claims, a court may consider the allegations of the complaint as well as documents attached to or specifically referenced in the complaint. *See Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003).

**DISCUSSION**

**1. Choice of law analysis is premature.**

Because Plaintiff alleges state law claims, the Court must determine which state's law applies to each claim. A federal court with diversity jurisdiction must apply the choice of law principles of its forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). In New Jersey, the relevant test is the "most significant relationship" test of the Restatement (Second) of Conflict of Laws, which has two steps: checking for an "actual conflict" and determining the "most significant relationship." *P.V. v. Camp Jaycee*, 962 A.2d 453, 459-60 (N.J. 2008). Courts must apply this test "issue-by-issue," meaning the Court must determine which

6

**NOT FOR PUBLICATION**

forum has the most significant relationship to each cause of action. *Id.*; *see also Lebegern v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006).

In the first step, a court decides if an actual conflict exists because "the choice of one forum's law over the other will determine the outcome of the case." 15A C.J.S. Conflict of Laws § 30 (2014). If there is no conflict or only a "false conflict," where "the laws of the two jurisdictions would produce the same result on the particular issue presented," the substantive law of the forum state applies. *Id.* § 31; *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997). If there is an actual conflict, the court proceeds to the second step and must determine which jurisdiction has the "most significant relationship to the claim." *Camp Jaycee*, 962 A.2d at 460; *see Maniscalco v. Brother Int'l Corp.*, 709 F.3d 202, 207 (3d Cir. 2013). This analysis relies on factors outlined in the Restatement (Second) of Conflict of Laws and varies by the nature of the claim, though always with an eye to the general principles of Restatement Section 6. *Camp Jaycee*, 962 A.2d at 459-60. For contract claims (including breach of express and implied warranty claims), courts look to Restatement Section 188. *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 704 (D.N.J. 2011). For claims involving fraud or misrepresentation, including claims under state consumer fraud statutes, courts look to Restatement Section 148. *Id.* at 708.

Cummins and Peterbilt assert that New Jersey law may not govern Plaintiff's claims and that choice of law determinations are premature without more facts. Cummins Mem. of Law in Supp. Mot. to Dismiss ("Cummins Mem.") 9 n.4, ECF No. 22-1; Peterbilt Mem. of Law in Supp. Mot. to Dismiss ("Peterbilt Mem.") 9 n.4, ECF No. 21-1. The Court agrees that a choice of law analysis is premature. Although choice of law issues can be resolved at the motion to dismiss stage, *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x. 250, 255 (3d Cir. 2010), the district court must have enough factual information to conduct the choice of law analysis. When facts are deficient at

NOT FOR PUBLICATION

the motion to dismiss stage, courts in this district often find choice of law inquiries premature. *See, e.g., In re K–Dur Antitrust Litigation*, 338 F. Supp. 2d 517 (D.N.J. 2004); *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009); *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 705 (D.N.J. 2011). Because the amended complaint does not allege facts indicating which states other than New Jersey may have interests in this matter, the present factual record is insufficient for choice of law analysis.

The Court must still determine, however, whether Plaintiff has succeeded in stating claims that survive Defendants' motions to dismiss. Since Plaintiff has made its allegations under New Jersey law, the Court will apply New Jersey law for the purpose of examining Plaintiff's claims under the Rule 12(b)(6) standard. *See Harper*, 595 F. Supp. 2d at 491 (finding choice of law analysis premature and examining claims under assumption that New Jersey law applied); *Arlandson*, 792 F. Supp. 2d at 705; *see also Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011).

### 2.   Count One: The amended complaint adequately alleges NJCFA claims.

Plaintiff alleges that Defendants violated the NJCFA by making "knowing and intentional concealments and omissions of material information," making "misrepresentations," and engaging in "unconscionable practices." Am. Compl. ¶ 47.

As remedial legislation, the NJCFA is to be "liberally construed in favor of protecting consumers," *Barry v. Arrow Pontiac, Inc.*, 494 A.2d 804, 811 (N.J. 1985), and motions to dismiss NJCFA claims are "appropriately approached with hesitation." *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177 (N.J. Super. Ct. App. Div. 2003). To state a cause of action under the NJCFA, a plaintiff must allege: (1) a defendant's unlawful practice, (2) an ascertainable loss by the plaintiff, and (3) a causal connection between the two. *Int'l Union of Operating Engineers*

**NOT FOR PUBLICATION**

*Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1086 (N.J. 2007). The NJCFA does not require a direct relationship, or privity, between plaintiff and defendant. *Katz v. Schachter*, 598 A.2d 923, 926 (N.J. Super. Ct. App. Div. 1991). To the contrary, it "encompass[es] the acts of remote suppliers . . . whose products are passed on to a buyer and whose representations are made to or intended to be conveyed to the buyer." *Perth Amboy Iron Works, Inc. v. Am. Home Assur. Co.*, 543 A.2d 1020, 1026 (N.J. Super. Ct. App. Div. 1988), *aff'd*, 571 A.2d 294 (N.J. 1990); *O'Loughlin v. Nat'l Cmty. Bank*, 770 A.2d 1185, 1194 (N.J. Super. Ct. App. Div. 2001).

The heightened pleading standard in Federal Rule of Civil Procedure 9(b) applies to fraud claims under the NJCFA. *Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir. 2007). As such, a plaintiff must allege NJCFA fraud claims "with sufficient particularity" by stating "the date, time and place of the alleged fraud or otherwise inject[ing] precision or some measure of substantiation into a fraud allegation." *Id.* If a plaintiff alleges that factual information is in the exclusive control of a defendant, the Court relaxes the showing required under Rule 9(b). *In re Craftmatic Secs. Litig.*, 890 F.2d 628, 645 (3d Cir. 1989). But even so, "pleaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based." *Id.*; s*ee In re Burlington Coat Factory*, 114 F.3d 1410, 1418 (3d Cir. 1997) ("[E]ven under a relaxed application of Rule 9(b), boilerplate and conclusory allegations will not suffice. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible."). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

An "unlawful practice" prohibited by the NJCFA may be an affirmative act, knowing omission, or regulatory violation. *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994).

**NOT FOR PUBLICATION**

Plaintiff alleges that Defendants made knowing omissions, made affirmative misrepresentations, and committed unconscionable practices in violation of the NJCFA. Am. Compl. ¶ 47. The Court begins its analysis with Plaintiff's omission claims.

> **a. The amended complaint adequately alleges NJCFA claims on the basis of knowing omissions.**

To state an omission claim under the NJCFA, a "plaintiff must show that defendant (1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment." *Judge v. Blackfin Yacht Corp.*, 815 A.2d 537 (N.J. Super. Ct. App. Div. 2003). As with all NJCFA claims, Plaintiff must also allege that it suffered an ascertainable loss and that Defendants' omission caused it. *Int'l Union*, 929 A.2d at 1086. Defendants argue that Plaintiff has failed to plead the knowledge, intent, ascertainable loss, and causation elements of its omission claims with sufficient particularity. Peterbilt Mem. 13-17; Cummins Mem. 12-16, 18-19. Contrary to Defendants' arguments, the Court finds Plaintiff's allegations adequate.

Plaintiff has pled enough facts to support a reasonable inference that Defendants knew about the alleged defects. Plaintiff asserts that the preceding model-year versions of Defendants' tractors had already exhibited the alleged defects and that Defendants did not correct them for subsequent model-year tractors. *Id.* ¶¶ 23-24. Plaintiff buttresses this allegation with a research report from CK Commercial Vehicles, published before Plaintiff purchased any of its tractors, which indicates that 37% of a group of users of tractors with Cummins engines experienced "a high rate of cracked DPF filters." Mulvaney Cert. Ex. E, ECF No. 26-4. While the report only provides anecdotal evidence of a single defective component in the tractors, it lends plausibility to Plaintiff's claim that Defendants' preceding model-year tractors experienced the defects which Plaintiff alleges afflicted its tractors. After demonstrating the plausibility of its allegations about

NOT FOR PUBLICATION

defects, the amended complaint also alleges that Defendants learned about these defects through "[t]he on-board diagnostics systems . . . that store trouble or fault codes and provide data to Defendants' and/or their authorized service providers' diagnostic computers." Am. Compl. ¶ 17. Plaintiff indicates that whenever "engine warning illuminations" occurred in one of its tractors, the tractor's "de-rating system" would force the driver "to divert from the intended trucking route to one of Defendants' authorized service providers" where the fault codes would be analyzed to determine what problems had occurred. *Id.* ¶¶ 20-21. These factual assertions adequately describe a means by which Defendants could have learned about the alleged defects. Although Plaintiff concedes that it does not know "the identity of persons at Defendants who knew about" the defects, Plaintiff reasonably contends that these persons' identities are within Defendants' exclusive knowledge. *Id.* ¶ 42.

Cummins protests that Plaintiff does not allege "that there is a connection between the earlier models and the models at issue here," Cummins Mem. 14, but Plaintiff's complaint does describe Defendants as selling subsequent generations of its tractors "with knowledge and deliberate indifference that the problems with the prior generation of engines had not been corrected." Am. Compl. ¶ 24. Finally, though the technical service bulletins for Cummins ISX15 engines were mostly issued after Plaintiff purchased its tractors, their publication adds further plausibility to Plaintiff's allegations that Defendants had knowledge of at least some of the alleged defects. The Court finds that Plaintiff has alleged enough facts regarding Defendants' knowledge of defects in Plaintiff's tractors to survive a motion to dismiss.

Defendants also argue that Plaintiff has failed to properly allege Defendants' intent to conceal the defects from Plaintiff. The Court finds that Plaintiff has provided enough factual content to enable a reasonable inference that, knowing about their tractors' defects, Defendants

**NOT FOR PUBLICATION**

concealed them from the public, including Plaintiff, to support continued sales. All that Plaintiff must do to satisfy Rule 9(b) is allege intent generally, Fed. R. Civ. P. 9(b), and Plaintiff's amended complaint does so repeatedly. *See* Am. Compl. ¶¶ 19, 22, 30, 35, 49. Plaintiff also sufficiently asserts ascertainable loss and causation. Plaintiff establishes ascertainable loss by stating that it incurred over $80,000 in post-warranty repair costs. *Id.* ¶ 33. Plaintiff adequately alleges causation by tying Defendants' failure to disclose the tractors' defects to the monetary losses Plaintiff incurred in attempting to repair them. *Id.* ¶ 37.

Defendants further contend that Plaintiff's NJCFA claims fail because Plaintiff has not pled "substantial aggravating circumstances." Cummins Mem. 17-18; Peterbilt Reply Br. 3-4. This argument is misguided because Plaintiff is not required to plead "substantial aggravating circumstances" in this circumstance. Cummins is correct that a breach of warranty alone, without substantial aggravating circumstances, is not actionable under the NJCFA. *Cox*, 647 A.2d at 462 ("a breach of warranty, or any breach of contract, is not per se unfair or unconscionable and a breach of warranty alone does not violate a consumer protection statute") (quoting *D'Ercole Sales, Inc. v. Fruehauf Corp.*, 501 A.2d 990 (N.J. Super. App. Div. 1985)). But here, Plaintiff's case is not solely predicated on breach of warranty. Plaintiff establishes independent grounds for NJCFA liability by contending that Defendants knowingly omitted material facts regarding defects in Plaintiff's tractors. Because Plaintiff does not predicate its NJCFA claim on Defendants' alleged breaches of warranty, Plaintiff is not required to plead aggravating circumstances.

Finally, Defendants contend that Plaintiff's NJCFA cause of action improperly lumps them together and fails to distinguish their respective conduct. The Cummins entities argue that it "is impossible to discern . . . what supposed wrongdoing is attributed to each of the Cummins Defendants," Cummins Mem. 10-11, and Peterbilt argues that Plaintiff improperly lumps its

12

NOT FOR PUBLICATION

conduct with Cummins's. Peterbilt Mem. 11-12. These arguments are unpersuasive. The amended complaint identifies both Cummins entities, Am. Compl. ¶¶ 2-3, and alleges that they together formed a partnership with Peterbilt. *Id.* ¶¶ 8-9. The amended complaint states that the Cummins entities and Peterbilt "jointly developed, designed, manufactured, marketed, assembled and sold" the tractors which Plaintiff bought as well as the preceding model-year lines. Am. Compl. ¶¶ 8-9, 16. Given this allegation of partnership, Plaintiff's references to the undifferentiated "Defendants" are reasonably understood as alleging conduct for which all three Defendants are responsible. At the motion to dismiss stage, the Court finds that Plaintiff's allegation of partnership is sufficient to satisfy the pleading requirements in Rules 8 and 9(b). *See Gray v. BMW of N. Am., LLC*, Civ. No. 13- 3417 (WJM), 2014 WL 4723161, at *2 (D.N.J. Sept. 23, 2014) ("Considering that this is a case of an alleged fraudulent concealment perpetrated by sophisticated corporate entities that are related to each other, the Plaintiffs need not distinguish the specific roles that each entity played in the fraudulent concealment in order to meet the Rule 9(b) standard.").

Plaintiff has adequately stated NJCFA claims based on knowing omissions against each Defendant. The Court denies Defendants' motions to dismiss Count One of the amended complaint. Because Count One survives, the Court need not consider the viability of Plaintiff's claims that Defendants also violated the NJCFA through affirmative misrepresentations and unconscionable practices.

### 3. Count Two: The amended complaint adequately alleges a breach of express warranty claim against Cummins, but not against Peterbilt.

Plaintiff alleges that the express warranties which Defendants made to Plaintiff were unconscionable and that Defendants breached the express warranties.

NOT FOR PUBLICATION

**a. Plaintiff has failed to allege that Defendants' warranties were unconscionable.**

Plaintiff asserts that Defendants' knowledge of defects in Plaintiff's tractors and engines made specific clauses in their express warranties unconscionable. Am. Compl. ¶¶ 59-60, 62; Pl.'s Opp. 20-21, ECF No. 26. Plaintiff cites as unconscionable Cummins's "(1) 2 year/250,000 mile limit; (2) its disclaimer of implied warranties . . . ; and (3) its disclaimer of consequential and incidental damages." Pl.'s Opp. 20. Within Peterbilt's express warranty, Plaintiff cites as unconscionable the "(1) 1 year/100,000 mile limit, (2) its disclaimer of implied warranties . . . , (3) [its] 1 year limitation of claim provision, and (4) its disclaimer of consequential and incidental damages." *Id.* Defendants argue that Plaintiff has failed to plead unconscionability because the amended complaint does not provide "specific facts to establish either substantive or procedural unconscionability." Peterbilt Reply Br. 7-9; *see also* Cummins Br. 20-21. The Court agrees that Plaintiff has failed to allege unconscionability.

To decide whether a contract is unconscionable, courts look to two factors: "(1) unfairness in the formation of the contract," or procedural unconscionability, and "(2) excessively disproportionate terms," or substantive unconscionability. *Sitogum Holdings, Inc. v. Ropes*, 800 A.2d 915, 921 (N.J. Super. Ct. Ch. Div. 2002). Procedural unconscionability "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process." *Id.* Substantive unconscionability "simply suggests the exchange of obligations so one-sided as to shock the court's conscience." *Id.* "Most courts have looked for a sufficient showing of both factors in finding a contract unconscionable." *Id.*

NOT FOR PUBLICATION

The Court first looks for substantive unconscionability. None of the terms Plaintiff attacks is substantively unconscionable on its face. Nothing about a 1 year/100,000 mile or 2 year/250,000 mile warranty limitation for commercial long-haul tractors or engines is unconscionable per se. Also, New Jersey law expressly allows parties to contractually disclaim implied warranties, exclude incidental and consequential damages, and limit the time during which parties can bring suit. N.J. Stat. Ann. § 12A:2-316 (implied warranties may be disclaimed by contract); N.J. Stat. Ann. § 12A:2-719 (consequential damages may be limited or excluded); N.J. Stat. Ann. § 12A:2-725 ("parties may reduce the statute of limitations to not less than one year"); *Eagle Fire Protection Corp. v. First Indem. of Am. Ins. Co.*, 678 A.2d 699 (N.J. 1996) ("Contract provisions limiting the period of time in which parties may bring suit are enforceable if reasonable"). Since these provisions have been authorized by the New Jersey legislature, they are not unconscionable per se. *See Amvest Corp. v. Anderson Equip. Co.*, 358 F. App'x 344, 349 (3d Cir. 2009) (finding that contractual provisions expressly authorized by Pennsylvania legislature were not unconscionable).

Plaintiff argues that the limitations and disclaimers in Defendants' warranties are substantively unconscionable because Defendants knew of the tractors' alleged defects when they made the warranties. Pl.'s Opp. 20. This does not establish substantive unconscionability. Courts in this district, including this one, have followed the Second Circuit's reasoning on this issue:

> All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired. A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

**NOT FOR PUBLICATION**

*Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986); *Majdipour v. Jaguar Land Rover N. Am., LLC*, Civ. No. 12-07849 (WHW), 2013 WL 5574626, at *20 (D.N.J. Oct. 9, 2013); *see also Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 566 (D.N.J. 2012) ("Nissan's alleged knowledge of a transmission defect is an insufficient basis on which to find the warranty limit unconscionable."). Plaintiff's allegations that Defendants knew the tractors had defects does not make the limitations on their warranties substantively unconscionable. Nor does it make the disclaimers or limitation-on-suit provisions in the warranties unconscionable. Although the Second Circuit examined time/mileage limitations in *Abraham*, its reasoning applies equally to disclaimers of implied warranties, disclaimers of incidental and consequential damages, and limitation-on-suit provisions. Like time/mileage limitations, these provisions serve to limit manufacturer liability for breach of express warranty. Since manufacturers can always be expected to "know" that parts will eventually fail, allowing plaintiffs to defeat these warranty limitations based on such "knowledge" would render the limitations meaningless and unenforceable.

The Court next looks for procedural unconscionability. The amended complaint alleges that "Plaintiff had no meaningful choice in determining [the] time limitations or disclaimers" and that there was "a gross disparity in bargaining power between Defendants and Plaintiff." Am. Compl. ¶ 60. In cases similar to this one, courts in this district have diverged on whether these allegations are sufficient to allege procedural unconscionability. *Compare Alban v. BMW of N. Am. LLC*, Civ. No. 09-5398 (DRD), 2011 WL 900114 (D.N.J. March 15, 2011) (dismissing unconscionability claim), *with Henderson v. Volvo Cars of N. Am., LLC*, Civ. No. 09-4146 (DMC), 2010 WL 2925913 (D.N.J. July 21, 2010) (allowing unconscionability claim to survive), *and Skeen v. BMW of N. Am., LLC*, Civ. No. 13-1531 (WHW), 2014 WL 283628, at *14 (D.N.J. Jan. 24, 2014) (allowing unconscionability claim to survive). Plaintiff urges the Court to follow *Henderson*

16

**NOT FOR PUBLICATION**

and *Skeen*, but unlike the plaintiffs in those cases, Plaintiff here is a commercial transportation company—not an individual consumer. Instead of buying a car for personal use, Plaintiff bought five long-haul tractors for its commercial operations. The amended complaint indicates that Plaintiff has business experience in making such purchases, as Plaintiff previously purchased Also unlike in *Skeen*, Plaintiff has not here alleged that Defendants specifically manipulated the duration of their warranties to avoid liability for the alleged defects. *Skeen*, 2014 WL 283628, at *14. Without further information about the circumstances of Plaintiff's negotiation of the warranty agreements, the amended complaint gives the Court insufficient grounds to infer procedural unconscionability. Plaintiff has not adequately alleged that Defendants' warranties are unconscionable.

> **b.   The amended complaint adequately alleges that Cummins breached an express warranty.**

The amended complaint alleges that Cummins violated an express warranty by selling Plaintiff defective tractors and failing to cure the defects during applicable warranty periods. Among other warranties, Plaintiff claims that Cummins provided "a base engine warranty against defects in material and workmanship for the first to occur of 2 years or 250,000 miles or 6,250 hours of operation." Am. Compl. ¶ 55.

Under New Jersey law, "to state a claim for breach of express warranty, Plaintiffs must properly allege: (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Francis E. Parker Memorial Home, Inc. v. Georgia-Pacific LLC*, 945 F. Supp. 2d 543, 568 (D.N.J. 2013) (citing N.J. Stat. Ann. § 12A:2-313).

**NOT FOR PUBLICATION**

Plaintiff's amended complaint satisfies the prima facie pleading requirements for Cummins's breach of its express warranty. Plaintiff plainly alleges, and Cummins acknowledges, that it warranted the engine to be free from defects in materials and workmanship. Am. Compl. ¶ 55; Cummins Mem. 21-22. Second, Plaintiff asserts that this warranty was part of the basis of the bargain underlying Plaintiff's purchases. Am. Compl. ¶ 63. Third, Plaintiff claims that the engines Plaintiff purchased contained "defective materials and workmanship" which Defendants did not adequately repair or replace during the warranty period. *Id.* ¶¶ 63-64.

Cummins argues that Plaintiff's alleged defects fall outside its express warranty. Cummins attests that its warranty provides only "for repair of defects arising from workmanship and materials" during the first two years or 250,000 miles of the engines' life, and emphasizes that its warranty "does not cover design defects" or the "alleged reduced value of the product delivered." Cummins Mem. 21-22. Cummins adds that Plaintiff's allegations about the insufficiency of the repairs Cummins made during the warranty period are too conclusory to state a claim for breach of warranty. *Id.*

The Court finds that Plaintiff adequately alleges breach of Cummins's warranty. Cummins's argument that its warranty was limited to materials and workmanship is off target because the amended complaint repeatedly claims there were defects in materials and workmanship. Am. Compl. ¶¶ 27, 34, 36, 42, 64. Plaintiff also indicates that Defendants made repair efforts during the warranty period, but failed to remedy the substandard materials and workmanship in the tractors' engines, aftertreatment systems, and on-board diagnostic systems. *Id.* ¶¶ 33-35, 64. These allegations are not conclusory. The amended complaint indicates that "[m]ost of the warranty work . . . [was] performed at Defendants' authorized service providers[,] many of which were in New Jersey." *Id.* ¶ 34. But, despite the warranty repair efforts, which began

18

**NOT FOR PUBLICATION**

"within the first 25,000 miles," the tractors "continued to experience frequent engine faults, de-rating and shut-downs." *Id.* ¶ 33. These allegations enable a reasonable inference that Cummins is liable for breach of express warranty. The Court denies Cummins's motion to dismiss Count Two.[1]

### c. Plaintiff's claim against Peterbilt for breach of express warranty is time-barred.

Plaintiff also contends that Peterbilt violated an express warranty. Plaintiff asserts that Peterbilt provided "limited standard warranties against defects in material and workmanship for the base vehicle of the sooner of 12 months or 100,000 miles and for various components manufactured by [non-parties] of the sooner of 36 months or 300,000 miles." *Id.* ¶ 56.

Plaintiff has made an adequate prima facie claim for Peterbilt's breach of express warranty. Plaintiff plainly alleges, and Peterbilt acknowledges, that it warranted the base vehicle and various components to be free from defects in materials and workmanship. Am. Compl. ¶ 56; Peterbilt Mem. 19. Second, Plaintiff asserts that these warranties were part of the basis of the bargain underlying Plaintiff's purchases. Am. Compl. ¶ 63. Finally, Plaintiff claims that the tractors purchased contained "defective materials and workmanship" which Defendants did not adequately repair or replace when Plaintiff sought repairs during the warranty period. *Id.* ¶¶ 63-64.

Peterbilt contends that Plaintiff's breach of express warranty claim is untimely. Peterbilt asserts that its warranty provided coverage for 12 months or 100,000 miles, whichever came first, and provided that Plaintiff was required to bring any lawsuit within one year of the accrual of any cause of action. Peterbilt Mem. 19. On this basis, Peterbilt argues that the latest possible date Plaintiff could have filed a timely lawsuit against Peterbilt for breach of warranty was December 8, 2013, two years after its last tractor purchase. *Id.* Because Plaintiff filed this suit on July 2, 2014,

---

[1] The Court need not decide whether Plaintiff's remaining allegations regarding breach of express warranty by the Cummins Defendants are sufficient to state a claim to relief.

**NOT FOR PUBLICATION**

Peterbilt claims it is barred. *Id.* Plaintiff counters that, if the time limitation provisions are not unconscionable, they are unreasonable and unenforceable. Pl. Opp. 25.

Since the Court earlier concluded that the limitation-on-suit provision in Peterbilt's express warranty is not unconscionable, the Court now considers Plaintiff's argument that it is unreasonable and unenforceable. Under New Jersey law, contract provisions limiting the period of time in which parties may bring suit are enforceable if reasonable. *Eagle Fire Protection Corp.*, 678 A.2d at 704. "The boundaries of what is reasonable under the general rule require that the claimant have sufficient opportunity to investigate and file an action, that the time not be so short as to work a practical abrogation of the right of action, and that the action not be barred before the loss or damage can be ascertained." *Id.* at 706 (quoting *Camelot Excavating Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 410 Mich. 118, 301 N.W.2d 275, 277 (1981)).

The Court finds that the one-year limitation-on-suit provision in Peterbilt's express warranty is reasonable and enforceable. One-year time limitations have routinely been upheld by New Jersey courts. *See Martinez-Santiago v. Pub. Storage*, Civ. No. 14-302 (JBS), 2014 WL 4053960, at *4 (D.N.J. Aug. 14, 2014) (listing cases). The one-year limitation here did not serve to bar Plaintiff's action against Peterbilt before Plaintiff could discover its loss, or otherwise to abrogate Plaintiff's ability to sue Peterbilt for breach of warranty.

Plaintiff cites *Martinez-Santiago v. Pub. Storage* in arguing that the one-year provision is unreasonable, but that case presented a distinct situation in which a limitation-on-suit provision deprived the plaintiff of its right to sue before the plaintiff even discovered its injury. *See Martinez-Santiago*, 2014 WL 4053960, at *5. Here there is no equivalently unreasonable situation. Plaintiff also argues that Peterbilt's one-year limitation-on-suit provision is unreasonable because "it did not allow McDermott . . . to investigate whether the defects would be properly covered by

20

**NOT FOR PUBLICATION**

Cummins' 2 year/250,000 mile warranty and determine whether out of pocket losses would accrue." Pl.'s Opp. 26. This argument is misguided because the extended duration of Cummins's warranty did not deprive Plaintiff of its year-long opportunity to investigate its tractors' alleged defects and file a lawsuit against Peterbilt for breach of warranty.

Peterbilt's one-year contractual limitation-on-suit provision is reasonable and enforceable,[2] and Plaintiff's breach of express warranty claims against Peterbilt are time-barred. The Court grants Peterbilt's motion to dismiss Count Two.

### 4. Count Three: The amended complaint does not adequately allege breach of the implied warranty of merchantability.

The amended complaint also alleges that Cummins and Peterbilt breached implied warranties of merchantability. Am. Compl. ¶¶ 70-81. Defendants argue that their written warranty agreements effectively disclaimed implied warranties. Cummins Mem. 24-25; Peterbilt Mem. 17-18. The Court agrees that Defendants' disclaimers were effective and that Plaintiff has failed to state a claim for breach of the implied warranty of merchantability.

Under New Jersey law, a warranty of merchantability is implied in every contract for the sale of goods, but may be disclaimed. N.J.S.A. §§ 12A:2-314, 12A:2-316. To exclude the implied warranty of merchantability, a disclaimer must mention merchantability and, when written, be conspicuous. N.J.S.A. § 12A:2-316(2). A clause is conspicuous when it is written such that a reasonable person against whom it is to operate ought to have noticed it. N.J.S.A. § 12A:1–

---

[2] The Court notes that the entirety of Plaintiff's claim against Peterbilt for breach of express warranty is not necessarily time-barred. Plaintiff alleges that Peterbilt's warranty covered "various components manufactured by Eaton, Bendix, Meritor, Dane Spicer Sheppard and TRW [for] the sooner of 36 months or 300,000 miles." Am. Compl. ¶ 56. This is much longer in duration than the twelve month/100,000 mile warranty for the base vehicle. Despite Plaintiff's longer opportunity to bring claims related to certain components, Plaintiff has not alleged any defects in its Eaton, Bendix, Meritor, Dane Spicer Sheppard, or TRW components.

**NOT FOR PUBLICATION**

201(10). A printed heading in capitals is conspicuous. *Id.* Language in the body of a document is conspicuous if it is in larger than the surrounding text, or otherwise contrasts the surrounding text in type, font, or color. *Id.* "Whether a term is 'conspicuous' or not is a decision for the court." *Id.*

The Court finds that Cummins's and Peterbilt's disclaimers of implied warranties were conspicuous. Cummins's warranty agreement, which the Court reviews because it is specifically referenced in the amended complaint, *see Sentinel Trust*, 316 F.3d at 216, makes explicit that "**CUMMINS MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, OR OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**" Decl. of Nicole F. Mastropieri Ex. B, ECF No. 13-3. The disclaimer language is visible alongside all of the other warranty information, its font size and type are normal, it mentions merchantability, and it is emphasized in bold and all-capital letters. Likewise, Peterbilt's warranty agreement declares: "PETERBILT AND THE SELLING DEALER EXPRESSLY DISCLAIM ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE." Decl. of Danny C. Lallis Ex. A, ECF No. 15-3. Peterbilt's warranty is conspicuous for its all-capital font and presence amidst all of the other warranty information. Because the Court earlier found Defendants' warranty agreements not unconscionable, these conspicuous disclaimers of implied warranties bar Plaintiff's claims for breach of the implied warranty of merchantability.[3] Defendants' motions to dismiss Count Three of Plaintiff's amended complaint are granted.

---

[3] To the extent Plaintiff's amended complaint attempts to make out claims against Defendants for breach of the implied warranty of fitness for a particular purpose, Am. Compl. ¶¶ 72-74, the Court also finds that the express disclaimers in the warranty agreements bar such claims.

**NOT FOR PUBLICATION**

> **5.  Count Four: The amended complaint does not adequately allege breach of the implied covenant of good faith and fair dealing.**

Defendants also move to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing under Rule 12(b)(6). "A covenant of good faith and fair dealing is implied in every contract in New Jersey." *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001). The covenant's purpose is to ensure that contracting parties "refrain from doing anything which will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc.*, 864 A.2d 387, 396 (N.J. 2005) (internal quotation omitted). To establish a breach of the covenant of good faith and fair dealing, a plaintiff must show that "the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Id.* A plaintiff must also establish the defendant's "bad motive or intention," *Wilson*, 773 A.2d 1121, though at the pleading stage only an allegation of bad faith is required. *See Seidenberg v. Summit Bank*, 791 A.2d 1068, 1080 (N.J. Super. Ct. App. Div. 2002). Finally, a "[p]laintiff may not maintain a separate action for breach of the implied covenant of good faith and fair dealing [where] it would be duplicative of [its] breach of contract claim." *Hahn v. OnBoard LLC*, No. 09–3639, 2009 WL 4508580, at *6 (D.N.J. Nov.16, 2009); *see Wade v. Kessler Inst.*, 798 A.2d 1251, 1262 (N.J. 2002).

Defendants seek to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing on the basis that it "arises from the same set of facts as [Plaintiff's] breach of express warranty claim" and improperly duplicates it. Cummins Mem. 26-27; Peterbilt Mem. 22. The Court agrees. Plaintiff does not allege any basis for breach of the implied covenant of good faith and fair dealing that is different from the bases for its breach of express warranty claims.

23

**NOT FOR PUBLICATION**

Plaintiff's allegations that Defendants failed to repair defects in Plaintiff's tractors by "concealing the problems . . . [and] replacing the substandard parts with parts that were also substandard," Am. Compl. ¶ 85, assert nothing more than the grounds for Plaintiff's breach of express warranty claims. Because Plaintiff's breach of implied covenant claims are duplicative of their breach of express warranty claims, allowing them to move forward would improperly provide Plaintiffs with two paths to recovery for breach of warranty. *See TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, Civ. No. 12-3355 (RBK), 2014 WL 3853900, at *3 (D.N.J. Aug. 5, 2014).

The cases Plaintiff cites are inapposite. *Kuzian v. Electrolux Home Products, Inc.* applies non-New Jersey law. 937 F. Supp. 2d 599, 619 (D.N.J. 2013), *reconsideration granted*, Civ. No. 12-3341 (NLH), 2013 WL 6865083 (D.N.J. Dec. 30, 2013) (applying New York law). *Alin v. Am. Honda Motor Co.* and *Joc, Inc. v. Exxonmobil Oil Corp.* deal with factual circumstances where the plaintiff's claim for breach of the implied covenant of good faith and fair dealing arose on separate grounds from its claims for breach of contract. *Alin*, Civ. No. 08-4825 (KSH), 2010 WL 1372308, at *12 (D.N.J. Mar. 31, 2010) (finding that plaintiff's "claim steers clear of the practice of recasting a breach of contract claim as a breach of good faith and fair dealing claim"); *Joc, Inc.*, Civ. No. 08-5344 (FSH), 2010 WL 1380750, at *6 (D.N.J. Apr. 1, 2010) (finding that plaintiff alleged breach of implied covenant of good faith and fair dealing by abusing discretionary authority without breaching express terms of contract). The *Payne* and *Henderson* courts did not expressly consider the issue of whether the plaintiffs' breach of implied covenant claims were duplicative. *Payne v. Fujifilm U.S.A., Inc.*, Civ. No. 07-385 (JAG), 2007 WL 4591281, at *11-12 (D.N.J. Dec. 28, 2007); *Henderson*, 2010 WL 2925913, at *13.

The Court dismisses Count Four of the amended complaint.

**NOT FOR PUBLICATION**

> **6.   Count Five: The amended complaint does not adequately allege unjust**
>
> **enrichment.**

Defendants also seek to dismiss Plaintiff's cause of action for unjust enrichment under Rule 12(b)(6). Plaintiff puts forward two bases for its unjust enrichment claims: (1) that Defendants were unjustly enriched "from Plaintiff's purchase of [their] products", and (2) that Defendants were unjustly enriched "from Plaintiff's purchase of post limited warranty repair services from Defendants." Am. Compl. ¶¶ 90-94.

To state a claim for unjust enrichment under New Jersey law, a plaintiff must allege that: (1) a defendant received a benefit from the plaintiff; (2) retention of the benefit by the defendant without payment would be unjust; (3) plaintiff expected remuneration from defendant at the time he performed or conferred a benefit on defendant; and (4) the failure of remuneration enriched the defendant beyond its contractual rights. *See VRG Corp. v. GKN Realty Co.*, 641 A.2d 519 (N.J. 1994). An unjust enrichment claim also requires a "direct relationship" between the parties or a mistake on the part of the party conferring the benefit. *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 335 (N.J. Super. Ct. App. Div. 1966).

Defendants argue that Plaintiff has failed to state a claim for unjust enrichment because the amended complaint does not allege a direct relationship between Plaintiff and Defendants. Cummins Mem. 28-30; Peterbilt Mem. 25-26. Plaintiff argues that "the direct relationship requirement does not prevent a plaintiff from bringing an unjust enrichment claim against a manufacturer just because the goods were purchased from a third-party dealer." Plaintiff's Opp. 29. The Court agrees with Defendants that Plaintiff's unjust enrichment claim fails because of the absence of allegations supporting a direct relationship. The amended complaint never alleges that Plaintiff purchased its tractors directly from either Peterbilt or Cummins. Although it is possible

**NOT FOR PUBLICATION**

that a plaintiff can recover from a manufacturer despite purchasing goods from a third-party, recovery for unjust enrichment must still be supported by some indicia of relationship between the plaintiff and manufacturer. There is none here. In the cases advanced by Plaintiff, the defendants had engaged in extensive marketing campaigns targeted at consumers. *See Lynch v. Tropicana Products, Inc.*, Civ. No. 11- 07382 (DMC), 2013 WL 2645050, at \*10 (D.N.J. June 12, 2013); *Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 200 (D.N.J. 2012). The only similar allegation in the amended complaint is that Plaintiff "obtained literature" about the tractors before purchasing them, but the amended complaint does not indicate that the literature was obtained from Defendants. Am. Compl. ¶ 13.

The Court also declines to find that there were "direct relationships based on the warranty agreements." Pl.'s Opp. 29. Courts in this district have routinely found that a manufacturer's warranty agreement does not establish a direct relationship upon which a plaintiff can mount an unjust enrichment claim. *See, e.g., Alin*, 2010 WL 1372308, at \*15; *Cooper v. Samsung Electronics Am., Inc.*, Civ. No. 07-3853 (JLL), 2008 WL 4513924, at \*10 (D.N.J. Sept. 30, 2008) *aff'd*, 374 F. App'x 250 (3d Cir. 2010).

With regard to Plaintiff's claim that Defendants were unjustly enriched by Plaintiff's payments for post-warranty repair services, the Court also finds that Plaintiff has failed to establish a direct relationship. The amended complaint alleges that "Defendants performed, or had a direct relationship with the certified service providers that performed the post limited warranty work on Plaintiff's Tractors." Am. Compl. ¶ 92. First, there is no factual content supporting the assertion that "Defendants performed" the post-warranty repairs. This statement is conclusory and insufficient. Second, the allegation that Defendants "had a direct relationship with the certified service providers" that did the post-warranty repairs is also insufficient because it does not allege

26

**NOT FOR PUBLICATION**

that those service providers shared profits with Defendants so as to unjustly enrich them. In New Jersey, a benefit conferred upon a retailer not sharing profits with the product manufacturer does not result in the manufacturer's unjust enrichment. *See Cooper*, 2008 WL 4513924, at *10. The amended complaint provides no basis for an inference that Defendants received any direct benefit from Plaintiff's payments for post-warranty repairs.

The Court dismisses Plaintiff's claims for unjust enrichment.

### 7.  Consequential and Incidental Damages

In addition to dismissing Plaintiff's causes of action under Rule 12(b)(6), Defendants also seek to dismiss Plaintiff's claims for consequential and incidental damages. Cummins Mem. 32; Peterbilt Mem. 26-27. Defendants cite *Chatlos Systems, Inc. v. National Cash Register Corp.*, 635 F.2d 1081 (3d Cir. 1980), for the proposition that the disclaimers of consequential and incidental damages included in their respective warranties are enforceable so long as they are not found to be unconscionable. Cummins Mem. 32; Peterbilt Mem. 26-27. Plaintiff's brief does not address this argument.

This issue is prematurely raised at the motion to dismiss stage. The New Jersey Supreme Court, adopting the Third Circuit's opinion in *Chatlos Systems*, has found that a warranty agreement's disclaimer of consequential and incidental damages may be invalidated "when the circumstances of the transaction, including the seller's breach [of warranty], cause the consequential damage exclusion to be inconsistent with the intent and reasonable commercial expectations of the parties." *Kearney & Trecker Corp. v. Master Engraving Co., Inc.*, 527 A.2d 429 (N.J. 1987). To invalidate a disclaimer of consequential and incidental damages, "*Kearney* therefore asks the Court to examine whether the seller breached the express warranty." *Skalski v. Elliot Equip. Co.*, Civ. No. 08-2686 (JBS), 2010 WL 891582, at *6 (D.N.J. Mar. 9, 2010). Because

**NOT FOR PUBLICATION**

the Court cannot, on a motion to dismiss, make determinations about the merits of Plaintiff's breach of express warranty claims, the Court cannot now determine whether Defendants' disclaimers of consequential and incidental damages are enforceable. *See id. at *7* (denying summary judgment on the validity of contractual disclaimer of consequential damages because "the question of whether Defendants breached the express warranties is still disputed"). The Court denies Defendants' motion to dismiss Plaintiff's claims for consequential and incidental damages.

**CONCLUSION**

Defendants' motions to dismiss are granted in part and denied in part. An appropriate order follows.


Date: March 11, 2015


**/s/ William H. Walls**
United States Senior District Judge
