**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| T.J. McDERMOTT TRANSPORTATION CO., INC., DeMASE WAREHOUSE SYSTEMS, INC., HEAVY WEIGHT ENTERPRISES, INC., P&P ENTERPRISES CO., LLC, YOUNG'S AUTO TRANSPORT, INC., ALLEN HARDWICK, and JOSE VEGA,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>CUMMINS, INC., CUMMINS EMISSION SYSTEMS, INC., and PACCAR, INC. d/b/a PETERBILT MOTOR COMPANY,<br><br>　　　　　　　　Defendants. | **OPINION**<br><br>Civ. No. 14-4209 (WHW) (CLW) |

**Walls, Senior District Judge**

  Plaintiff T.J. McDermott Transportation Co. filed this action on July 2, 2014, invoking this Court's diversity jurisdiction and alleging that tractors it purchased from Defendants had defective engines. T.J. McDermott filed an amended complaint on September 2, 2014. ECF No. 17. Defendants moved to dismiss that complaint, and this Court partially granted and partially denied that motion on March 11, 2014. ECF Nos. 37, 38. On December 29, 2015, Magistrate Judge Waldor granted Plaintiff leave to file a Second Amended Complaint, ECF No. 69, and Plaintiff did so on January 8, 2016. The Second Amended Complaint added Plaintiffs DeMase Warehouse Systems, Heavy Weight Enterprises, Inc., P&P Enterprises, Co., Young's Auto Transport, Inc., Allen Hardwick, and Jose Vega. *Id.* They seek to certify classes on behalf of purchasers in New Jersey, California, Florida, Georgia, Michigan, and Connecticut. Defendant PACCAR now moves to partially dismiss that complaint. Decided without oral argument under Fed. R. Civ. Pr. 78, the motion is granted in part and denied in part.

**NOT FOR PUBLICATION**

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from the Second Amended Complaint ("SAC"), ECF No. 69, unless otherwise noted. Plaintiffs allege that Defendants PACCAR and Cummins formed a partnership in 2001 for the "development, design, manufacture, assembly, marketing and sale of" tractors that used Cummins's ISX15 engine. *Id.* ¶ 14. According to Plaintiffs, PACCAR's vehicles equipped with the ISX15 engine from model years 2007 through 2009 experienced failures due to various problems relating to "exhaust gas recirculation ('EGR'), the EGR valves, diesel particulate filter ('DPF') systems and other sensors, and other piping and containment components for the Aftertreatment System." *Id.* ¶ 24. Plaintiffs assert that Defendants were aware of these failures in part because the vehicles' onboard diagnostics systems "store trouble or fault codes and provide data to Defendants' and/or their authorized service providers' diagnostic computers." *Id.* ¶ 19.

Despite these problems with earlier ISX15 models, Cummins "designed, manufactured, marketed, assembled and sold" a 2010 ISX15 model (the "subject engines"). *Id.* ¶ 16. Plaintiffs allege that Cummins designed these engines without "correcting the known problems with the 2007 through 2009 model year . . . engines." *Id.* ¶ 25. PACCAR then designed and marketed tractors equipped with the 2010 ISX15 engine (the "subject vehicles"). *Id.* ¶ 18. Plaintiffs assert that Cummins "warranted to Plaintiffs that the 2010 ISX15 engines would be free from defects in material and workmanship and that in the event a defect manifested, Cummins was obligated to correct the defect." *Id.* ¶ 26.

According to the complaint, Defendants "intentionally concealed" defects with the subject vehicles, including persistent problems with (1) the engines' gas recirculation system, (2) the aftertreatment system's diesel particulate filters, (3) the aftertreatment system's hydrocarbon

doser, (4) several of the engines' sensors, and (5) other components in the aftertreatment system's piping and containment system. *Id.* ¶ 27. Owners of the subject vehicles experienced various problems "often before the 200,000 mile interval, at a high rate." *Id.* ¶ 28. Their tractors "repeatedly and frequently broke down, failed to function properly, and failed to function reliably and dependably." *Id.* ¶ 32. Cummins issued seventeen technical service bulletins listing problems with the subject engines from 2011 through 2014. *Id.* ¶ 29. Plaintiffs allege that these defects were known to Defendants at the time of sale and that Defendants failed to disclose them. *Id.* ¶¶ 30-34.

Plaintiffs are companies and individuals that purchased the subject vehicles. Plaintiff T.J. McDermott, a New Jersey corporation, purchased five subject vehicles between 2010 and 2011. *Id.* ¶¶ 1, 36. Plaintiff DeMase, also a New Jersey corporation, purchased four subject vehicles in 2011. *Id.* ¶¶ 2, 37. Plaintiff Heavy Weight Enterprises, a Michigan corporation, bought one subject vehicle in 2010. *Id.* ¶¶ 3, 38. Plaintiff P&P, a Connecticut corporation, also bought one subject vehicle in 2010. *Id.* ¶¶ 4, 39. Plaintiff Young's Transport, a Florida corporation, bought two subject vehicles in 2012. *Id.* ¶¶ 5, 40. Plaintiff Hardwick, a Georgia resident, purchased a subject vehicle in 2010. *Id.* ¶¶ 6, 41. Plaintiff Vega, a California resident, purchased a subject vehicle in 2013. *Id.* ¶¶ 7, 42. These Plaintiffs experienced problems with the subject engines that they claim resulted in "out-of-pocket costs of repair, towing and lodging costs, rental costs of replacement vehicles, diminished value of Subject Vehicles, lost revenue, lost profit, and goodwill" as well as "substantially diminished resale value and intrinsic value." *Id.* ¶¶ 47, 48.

Plaintiffs also seek to certify several classes and sub-classes. They propose a New Jersey class consisting of all persons and entities in New Jersey who are "users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors" of a vehicle powered by a 2010 ISX15

engine, with a New Jersey subclass specifically relating to those whose vehicle was made by PACCAR. *Id.* ¶ 50. They also seek to certify identical classes and subclasses for persons and entities in the states of California and Florida. *Id.* Finally, Plaintiffs propose classes of 2010 ISX15 engine owners, without related subclasses for the states of Georgia, Michigan, and Connecticut. *Id.*

On behalf of themselves and the putative classes, Plaintiffs assert (1) one count under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, against Cummins on behalf of the New Jersey Class and against PACCAR on behalf of the New Jersey sub-class, *id.* ¶¶ 62-71, (2) one count of breach of express warranty under New Jersey law against Cummins on behalf of the New Jersey Class, *id.* ¶¶ 72-86, (3) one count of breach of express warranty under California law against Cummins on behalf of the California Class, *id.* ¶¶ 87-100, (4) one count for violation of the California Unfair Competition Law, Cal. Business and Professions Code § 17200, against Cummins on behalf of the California Class and against Cummins and PACCAR on behalf of the California sub-class, *id.* ¶¶ 101-109, (5) one count of breach of express warranty under Florida law against Cummins on behalf of the Florida Class, *id.* ¶¶ 110-124, (6) one count for violation of Florida's Unfair and Deceptive Trade Practices Act, § 501.201, Florida Statutes, against Cummins on behalf of the Florida Class and against PACCAR on behalf of the Florida sub-class, *id.* ¶¶ 125-132, (7) one count for breach of express warranty under Georgia law against Cummins on behalf of the Georgia class, *id.* ¶¶ 133-147, (8) one count for breach of express warranty under Michigan law against Cummins on behalf of the Michigan class, *id.* ¶ 148-162, (9) and finally one count of breach of express warranty under Connecticut law against Cummins on behalf of the Connecticut Class, *id.* ¶¶ 163-177. On March 9, 2016, the parties stipulated to a dismissal without prejudice of the claims against Cummins, subject to Cummins's agreement to

participate in discovery and toll the statute of limitations for claims asserted against it in the Second Amended Complaint. *See* ECF No. 91.

PACCAR moves to dismiss (1) DeMase's claim under the New Jersey Consumer Fraud Act, (2) Vega's claim under the California Unfair Competition Law, (3) Young's Transport's claim under the Florida Deceptive and Unfair Trade Practices Act, and (4) all claims for consequential and incidental damages under these laws. Mot. to Dismiss, ECF No. 77 at 8-13.

**STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679.

Federal Rule of Civil Procedure 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The purpose of the heightened pleading standard is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). "To satisfy this heightened standard, the plaintiff must plead or allege the date,

time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. Normally, "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations . . . with all of the essential factual background that would accompany the first paragraph of any newspaper story – that is, the who, what, when, where and how of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (citations and quotation marks omitted). "Courts should, however, apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (citation omitted).

## DISCUSSION

In its March 11, 2015 opinion addressing Defendants' original motion to dismiss, the Court held that choice of law analysis would be premature, noting that "the present factual record is insufficient for choice of law analysis." *See T.J. McDermott Transp. Co. v. Cummins, Inc.*, No. 14-4209, 2015 WL 1119475 at *4 (D.N.J. Mar. 11, 2015). This remains true, and the Court will analyze each of Plaintiffs' state law claims under the laws of that state for this motion. *See id.*

1. **DeMase has adequately pled a claim under the NJCFA.**

To state a claim under New Jersey's Consumer Fraud Act, a plaintiff must allege (1) a defendant's unlawful conduct, (2) an ascertainable loss by the plaintiff, and (3) a causal connection between the two. *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 389 (N.J. 2007). The NJCFA is to be "liberally construed in favor of protecting consumers." *Barry v. Arrow Pontiac, Inc.*, 100 N.J. 57, 69 (N.J. 1985). In light of this, motions to dismiss NJCFA claims are to be "approached with hesitation." *N.J. Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 13 (N.J. Ct. App. 2003). Fed. R. Civ.

**NOT FOR PUBLICATION**

Pr. 9(b)'s heightened pleading standard applies to fraud claims under the NJCFA. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

PACCAR argues that DeMase has not pled facts with sufficient particularity to show an ascertainable loss. Mot. to Dismiss at 11. This Court previously analyzed Plaintiff T.J. McDermott's claims and found that it "establishe[d] ascertainable loss by stating that it incurred over $80,000 in post-warranty repair costs." *T.J. McDermott*, 2015 WL 1119475 at *7. Defendant argues that "no such similar facts have been provided" by DeMase. Mot. to Dismiss at 12. Plaintiffs first respond that DeMase is not obligated to independently plead ascertainable losses because "McDermott's allegations already establish that losses from purchasing the Subject Vehicles are ascertainable." Opposition Brief ("Opp. Br."), ECF No. 82 at 16-17. They also argue that DeMase has independently established that its losses are ascertainable, because it has alleged that it would not have purchased the subject vehicles if it had been aware of the defects. Opp. Br. at 16-17.

The "viability of a CFA claim . . . 'often turns on the question of whether a plaintiff is able to provide sufficient evidence of an ascertainable loss.'" *Mickens v. Ford Motor Co.*, No. 10-cv-5842, 2015 WL 5310755 at *6 (D.N.J. Sept. 10, 2015) (quoting *Perkins v. DaimlerChrysler Corp.*, 383 N.J. Super. 99, 105 (N.J. Ct. App. 2006). The requirement that a plaintiff prove an ascertainable loss "has been broadly defined as embracing more than a monetary loss." *Union Ink Co. v. AT&T Corp.*, 352 N.J. Super. 617, 646 (N.J. Ct. App. 2002). An ascertainable loss occurs "when a consumer receives less than what was promised." *Id.*

The Second Amended Complaint alleges that the subject vehicles' "problems and defects resulted in warnings, deratings, and shutdowns, requiring expensive repairs in an effort to remediate the faults and frequent and excessive down times . . . ." SAC ¶ 32. It also specifically

7

alleges that T.J. McDermott's "out-of-pocket expenses for post-limited warranty repairs" exceeded $80,000. *Id.* ¶ 71. Although there is no equivalent allegation specifying DeMase's losses in a dollar amount, the defects in DeMase's tractors allegedly caused engine shutdowns and required expensive repairs. This adequately alleges an ascertainable loss. "[B]y the time of a summary judgment motion," DeMase will be obligated to provide an estimate of damages and show that its losses were "quantifiable or measurable," but it is entitled to discovery in order to make that showing. *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 249 (N.J. 2005); *see also Mickens*, 2015 WL 5310755 at *6.

### 2. Vega had adequately pled a California UCL claim.

#### a. Unfair Competition Law Claims

The California Unfair Competition Law prohibits business practices that are "unlawful, unfair, or fraudulent." Cal. Bus. & Prof. Code § 17200. Plaintiff Vega alleges that PACCAR's conduct violated all types. SAC ¶¶ 102-105. Unlawful practices are those that violate another law; "the UCL 'borrows' violations of other laws and treats them as unlawful practices independently actionable under the UCL." *Saldate v. Wilshire Credit Corp.*, 268 F.R.D. 87, 102 (E.D. Cal. 2010) (citing *Farmers Ins. Exchange v. Superior Court*, 2 Cal 4th 377, 383 (1992). A practice is unfair if "the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (Cal. Ct. App. 2006). To state a claim under the UCL, a plaintiff must plead that "(1) defendant engaged in one of the practices prohibited by the statue; and (2) plaintiff suffered actual injury in fact as a result of defendant's actions." *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009). The UCL allows a plaintiff to recover injunctive relief and restitution, but not

damages. *E.g. Asghari v. Volkswagen Group of America, Inc.*, 42 F. Supp. 3d 1306, 1324 (C.D. Cal. 2013).

### b. Vega has not adequately alleged unlawful conduct.

PACCAR first argues that Plaintiffs have failed to plead unlawful business practices because they have not identified which statute, regulation, or ordinance was violated by their conduct. Mot. to Dismiss at 9. Count Four alleges violations of each prohibition of the UCL. With respect to the unlawful assertion, it states that "Defendants have violated the unlawful prong of § 17200 by its violations as set forth below," SAC ¶ 103, but does not identify any specific law that PACCAR is alleged to have violated. A "violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Graham v. Bank of America, N.A.*, 172 Cal. Rptr. 3d 218, 231 (Cal App. Div. 2014) (quotations omitted). In their opposition to the motion to dismiss, Plaintiffs state that "PACCAR's argument overlooks the breach of warranty count in the SAC. Such an allegation would satisfy [the unlawful] prong." Opp. Br. at 23, fn. 8. But the breach of warranty claim brought by Vega on behalf of the proposed California class is brought only against Cummins, while the UCL violation is brought against PACCAR. SAC ¶¶ 87-100. And even if Cummins's alleged breach of expressed warranty could support a UCL claim against PACCAR, the breach of warranty claim was dismissed by the Court according to the parties' March 9 stipulation. Stipulation, ECF No. 91. Finally, Plaintiffs' other claims against PACCAR that are brought under the laws of other states cannot be used to support a claim under California's UCL. *See Hilton v. Apple Inc.*, No. 13-7674, 2014 WL 10435005 at *3-*4 (C.D. Cal. April 18, 2014). PACCAR is correct that Vega has failed to state a UCL violation under the unlawful prong.

### c. Vega adequately alleges a violation based on PACCAR's omission.

PACCAR next argues that Vega's UCL claim does not meet the requirements for pleading a violation based on an omission. Mot. to Dismiss at 9. Under California law, an omission is actionable if it is "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty*, 144 Cal. App. 4th at 835-36; *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). PACCAR argues that Vega has failed to show that it was obligated to disclose the alleged defects and so its failure to disclose any such defects is not an actionable omission in the absence of a contrary representation. Mot. to Dismiss at 9.

Relying on *Ostreicher v. Alienware Corp.*, PACCAR argues that a manufacturer is only obligated to disclose a defect if there has been "an affirmative misrepresentation or a safety issue." 322 F. App'x 489, 493 (9th Cir. 2009). *Ostreicher* relied on *Daugherty*, a decision of the California Court of Appeals for the Second District, which held that the defendants had no duty to disclose an alleged defect because the plaintiff's complaint "is devoid of factual allegations showing any instance of physical injury or any safety concerns posed by the defect." 144 Cal. App. 4th at 836. Plaintiffs respond that "[s]uch a limited duty to disclose only arises when the defect manifests after the warranty period expired, as was the case in *Ostreicher*." Opp. Br. at 24 fn 11. They point to *Decker v. Mazda Motor of America, Inc.*, where the Central District of California held that a "proper reading of *Daugherty* reveals a two-step duty to disclose analysis" under which a manufacturer has a duty to disclose (1) any defects that would have "caused the consumer to not purchase the [product] if they had been disclosed" during the warranty period and (2) defects relating to safety after the end of the warranty period. No. 11-873, 2011 WL 5101705 at *4 (C.D. Cal. Oct. 24, 2011). The year after *Decker* was decided, the Ninth Circuit

**NOT FOR PUBLICATION**

stated that "California federal courts have generally interpreted *Daugherty* as holding that '[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue,'" without citing *Decker*. *Wilson*, 668 F.3d at 1141.

This Court need not decide between these two conflicting interpretations of *Daugherty*, because the complaint's allegations raise a safety issue, which explicitly gives rise to a duty to disclose under California law. *Daugherty*, 144 Cal. App. 4th at 836

The Second Amended Complaint asserts that the Subject Vehicles' onboard diagnostic systems "monitor and control all aspects of safety, emissions and performance" of the Subject Engines. SAC ¶¶ 19, 69. The complaint alleges that, when "there are problems with the Subject Engine or Aftertreatment Systems that require the Subject Vehicle be brought to one of Defendants' authorized service providers," warning lights would be illuminated and "after a short de-rated operating time, the Subject Engine is shut down by the on-board diagnostic system." *Id.* ¶ 20. The complaint also alleges that these "on-board diagnostic systems had problems." *Id.* ¶ 70. These assertions, along with the allegation that the subject engines experienced "clogging" and "plugging" and would cause the tractors to shut down during use, *id.* ¶¶ 20, 29, raise the issue of safety. The existence of a defect that caused a safety risk would trigger a duty to disclose and allow Vega to plead a UCL violation based on an omission. *Compare Marsikian v. Mercedes Benz USA, LLC*, No. 8-4876, 2009 WL 8379784, at *6-7 (C.D. Cal. May 4, 2009) (safety issue adequately alleged because "it is not implausible that [air intake clogging] would cause 'catastrophic engine . . . failure' while the car is on the road") *and Wilson*, 668 F.3d at 1144 (no safety issue alleged where "it is difficult to conceive (and the complaint

does not explain) how [laptops sold by defendant] could ignite if [the alleged defect renders them] 'unable to receive an electrical charge.'").

### d. Vega adequately alleges reliance.

PACCAR further argues that Vega fails to allege reliance, noting that he "fails to state that he viewed any promotional materials or advertisements from PACCAR prior to his purchase." Mot. to Dismiss at 10. A claim for fraud under the UCL requires a showing of actual reliance. *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (Cal. 2009). Reliance may be established by showing that, in the "absence [of a defendant's misrepresentation] the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct." *Id.* at 327 (internal citation omitted). A plaintiff need not show "individualized reliance on specific misrepresentations," and the misrepresentation need not be "the sole or even the predominant or decisive factor" in influencing a plaintiff's conduct. *Id.* at 326-27. A "presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material," and "materiality is generally a question of fact." *Id.* "Alleged defects that create 'unreasonable safety risks' are considered material." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015).

Plaintiffs argue that reliance has been adequately pled because Vega alleges that he "would not have purchased the Subject Vehicle . . . or not have paid as much for the Subject Vehicle" if "defendants [had] disclosed the defect with the Subject Engine." SAC ¶ 107. Plaintiffs also argue that the alleged defects should be considered material because they created unreasonable safety risks. In its reply, PACCAR contends that the complaint fails to plead any facts "related to Vega's transaction and/or experiences" or any unreasonable safety risk. Reply Br., ECF No. 85 at 7-9.

12

Materiality of a misrepresentation is "a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *In re Tobacco II Cases*, 46 Cal. 4th at 327 (internal quotations omitted). The alleged defects led to repeated engine shutdowns that rendered the tractors unusable until they were repaired at a service provider. A defect that repeatedly renders a product unusable is unlikely to be "obviously unimportant" to the consumer. Materiality can also be inferred here because, as discussed, the Second Amended Complaint raises a safety issue. The facts alleged in the Second Amended Complaint, taken as true for the purpose of a motion, raise a question of fact as to materiality and an inference of materiality based on the issue of safety. *Cf. McVicar v. Goodman Global, Inc.*, No. 13-1223, 2015 WL 4945730 at *11 (C.D. Cal. Aug. 20, 2015) (In "some cases, for example, those involving automobile safety, it is fair to assume that *all* of the purchasers of automobiles read some marketing materials regarding the product."). PACCAR's motion to dismiss Vega's UCL claim based on failure to plead reliance is denied.

### e. Vega's claim for restitution has been adequately pled.

Finally, PACCAR argues that Plaintiffs fail to make a valid claim for restitution because Vega does not allege that he bought his vehicle directly from Defendant. PACCAR relies on *Asghari v. Volkswagen Group of America, Inc.*, where the Central District of California dismissed a UCL claim for restitution because the plaintiff had bought an allegedly defective vehicle from a third party and could not show that defendants obtained her money or property. 42 F. Supp. 3d 1306, 1324 (C.D. Cal. 2013). *Asghari* is distinguishable because the plaintiffs in that case purchased their vehicles used, *id.* at 1318, while Vega alleges that he purchased his tractor new. SAC ¶ 42. To recover on a claim for restitution, Vega will have to produce "evidence that supports the amount of restitution necessary to restore to the plaintiff any money .

. . which may have been acquired by means of . . . unfair competition." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 697 (Cal. Ct. App. 2006). The allegation that Vega purchased a new, rather than a used, tractor is sufficient to entitle him to discovery in order to locate evidence that PACCAR is in possession of money acquired by means of unfair competition.

### 3. Young's Transport fails to allege conduct in the state of Florida.

The Florida Unfair and Deceptive Trade Practices Act prohibits "unfair, deceptive and/or unconscionable practices which have transpired within the territorial boundaries of [Florida]." *Millennium Commc'n & Fulfillment, Inc. v. Office of Attorney Gen.*, 761 So. 2d 1256, 1262 (Fla. Dist. Ct. App. 2000); *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330 (S.D. Fla. 2012). A "consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006). PACCAR argues that Plaintiff's claim fails because it has not shown that it suffered actual damages and it has not specified that the alleged purchase took place in Florida. Mot. to Dismiss at 12-13. Young's Transport has alleged that its vehicles suffered a "diminution in value" and stated that it is a Florida corporation with its principal place of business in Fort Myers, Florida. SAC ¶¶ 5, 132.

Young's Transport has adequately alleged actual damages. The FDUTPA "allows for recovery of the difference between the value of the defective . . . goods provided and the value of non-defective . . . goods . . . ." *Orkin Exterminating Co. v. DelGuidice*, 790 So. 2d 1158, 1162 (Fla Dist. Ct. App. 2001). Young's Transport alleges that the subject vehicles had defective engines, identifies specific mechanical defects in the engines, and claims that these defects diminished the value of the subject vehicles. SAC ¶¶ 27, 131-132. In short, it alleges that the

**NOT FOR PUBLICATION**

value of its defective tractors was less than the value of non-defective tractors would have been. The allegation of these specific defects contain sufficient factual content to withstand a motion to dismiss.

Next, PACCAR argues that Plaintiffs fail to allege sufficient activity within the state of Florida to proceed under the FDUTPA. Plaintiffs assert that the claim is sufficiently pled because the Second Amended Complaint "provides that Plaintiff Young's Transport is a Florida corporation . . . and that Defendants knowingly and intentionally concealed their knowledge of the problems and defects when the trucks were placed into the stream of commerce." Opp. Br. at 18. They argue that "it is reasonable to infer that Defendants' misconduct reached Florida because any decision to purchase the trucks and subsequent injury occurred in Florida, which would not have occurred had Defendants not concealed the material information in their marketing campaign." *Id.*

Plaintiffs cite four cases where courts have declined to dismiss FDUTPA claims on the ground that injuries took place outside of Florida, *id.*, but in each of these cases the plaintiffs alleged that at least some of defendants' activities occurred within the state. *Solyom v. World Wide Child Care Corp.*, 14-80241-CIV, 2015 WL 6167411 at *2-*3 (S.D. Fla. Oct 15, 2015) (Defendants' principal place of business was in Florida, and they were alleged to have hired "unlicensed sales people" who made material misrepresentations while selling securities.); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 538 (E.D. Pa. 2010) (Plaintiffs alleged that "their purchases and/or reimbursements of" defendants' medicine took place in Florida.); *Carnival Corp. v. Rolls-Royce PLC*, No. 8-23318-CIV, 2009 WL 3861450 at *6 (S.D. Fla. Nov. 17, 2009) ("Plaintiffs' Amended Complaint has alleged numerous actions that occurred in Florida . . ."); *Millennium Commc'n*, 761 So. 2d at 1262 ("the allegations in this case reflect that the offending

15

conduct occurred entirely within this state"). The mere assertion that Young's Transport is a Florida company that purchased Defendant's tractors is insufficient to allege that the "unfair, deceptive and/or unconscionable practices . . . transpired within the territorial boundaries" of Florida. *Millennium Commc'n*, 761 So. 2d at 1262. As the Southern District of Florida has explained, "pertinent question . . . is not the citizenship of the [p]laintiff, but rather the connection of the [d]efendants' alleged activities with Florida." *Solyom*, 14-80241-CIV, 2015 WL 6167411 at *2-*3. Alleging that Plaintiff, rather than Defendant, is a Florida company, on its own, does not establish a connection between a defendant's activities and that state. And alleging that Young's Transport's principal place of business is in Florida is not equivalent to alleging that the decision to purchase PACCAR tractors, or the purchase itself, took place in Florida.

Where FDUTPA complaints have failed to specify which actions occurred in Florida, courts have granted motions to dismiss "with leave to re-plead to specify the location of the conduct to make certain it occurred within the territorial boundaries of Florida." *Five for Entm't S.A.*, 877 F. Supp. 2d at 1331. Because Plaintiffs have not pled that any of the subject vehicles were purchased by Young's Transport in Florida, Young's Transport's FDUTPA claim is dismissed without prejudice. Plaintiffs are granted leave to file an amended complaint that pleads the specific location of the conduct alleged in Young's Transport's FDUTPA claim within 90 days of the date of this order.

### 4. Plaintiffs' claims for consequential and incidental damages are partially dismissed.

Defendant argues that all claims for consequential damages against PACCAR should be dismissed because (1) PACCAR's warranties included a damages limitation that is valid under New Jersey law and (2) consequential damages are not available under either the UCL or FDUTPA. Mot. to Dismiss at 13.

16

**NOT FOR PUBLICATION**

Under New Jersey law, consequential damages may be limited by a disclaimer, and PACCAR disclaimed consequential damages in its express warranties. *See Chatlos Sys., Inc. v. Nat'l Cash Register Corp.*, 635 F.2d 1081, 1083 (3d Cir. 1980); *see also Kearney & Trecker Corp. v. Master Engraving Co., Inc.*, 107 N.J. 584, 600 (N.J. 1987); Warranty, ECF No. 15-3. A disclaimer of consequential and incidental damages may be invalidated "when the circumstances of the transaction, including the seller's breach [of warranty], cause the consequential damage exclusion to be inconsistent with the intent and reasonable commercial expectations of the parties . . . ." *Kearney*, 107 N.J. at 600. Previously, the Court found that this issue was prematurely raised because it could not rule on whether PACCAR's disclaimer was invalidated without deciding the merits of T.J. McDermott's claim for breach of express warranty. *T.J. McDermott*, 2015 WL 1119475 at *15. Defendant now claims that, because there is no longer any "breach of warranty cause of action alleged against PACCAR," the "damages limitation should be enforced, and all claims for consequential damages against PACCAR should be dismissed." Reply Br. at 11.

This issue remains premature. Although Plaintiffs no longer bring a claim against PACCAR for breach of express warranty, the Court cannot make a determination as to the "circumstances of the transaction," including the "seller's breach" and the "intent . . . of the parties." *Kearney*, 107 N.J. at 600. These are disputed questions of fact that cannot be decided on a motion to dismiss.

PACCAR is correct that consequential damages are not available under the FDUTPA or the UCL. "Florida courts specifically reject the recovery of consequential damages under FDUTPA." *Eclipse Medical, Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999) (citing *Urling v. Helms Exterminators, Inc.*, 468 So.2d 451, 454 (Fla. Dist.

Ct. App. 1985). Similarly, "[r]elief under the UCL is limited to injunction and restitution." *Marolda*, 672 F. Supp. 2d at 1004; *see Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (Cal. 2003) (quotations and alternations omitted). Plaintiffs' claims for consequential damages under the FDUTPA and UCL are dismissed. Defendant's motion to dismiss Plaintiffs' claims for consequential damages under the NJCFA is denied.

## CONCLUSION

Defendant PACCAR's motions to dismiss are granted in part and denied in part. Plaintiff Vega's claim under the UCL, brought in Count Four, is dismissed only to the extent that it relies on the "unlawful" prong of that statute. Plaintiff Young's Transport's claim under FDUTPA, brought in Count Six, is dismissed without prejudice, and Plaintiffs are granted leave to amend their complaint to specify the location of the activity alleged in that Count within 90 days of the date of this order. Plaintiffs' claims for consequential damages under the FDUTPA and UCL are dismissed. The remainder of Defendant's motion is denied. An appropriate order follows.

Date: June 7, 2016

_United States Senior District Judge_